IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSEPH MANSSOR | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs | § | Cause No. 3:23-CV-236 |
| | § | |
| NRRM, LLC dba CARSHIELD | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED PETITION

Plaintiff, JOSEPH MANSSOR, files this original petition against Defendant, NRRM, LLC dba CARSHIELD, and alleges as follows:

## I.
## DISCOVERY-CONTROL PLAN

Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.3 and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiff requests injunctive relief.

## II.
## CLAIM FOR RELIEF

Plaintiff seeks only monetary relief of $250,000 or less, excluding interest, statutory or punitive damages and penalties, and attorney fees and costs.

## III.
## PARTIES

Plaintiff, JOSEPH MANSSOR is an individual residing in El Paso County, Texas.

Defendant, NRRM, LLC aka CARSHIELD, a foreign corporation organized and existing under the laws of Missouri, whose principal office is located at 500 Boone's Lick Rd., St. Charles, MO 63301, is authorized to do business in Texas and may be served with process by serving its registered agent for service

of process, Felicia Dixon, in Saint Charles County at 500 Boone's Lick Rd., St. Charles, MO 63301.

## IV.
## VENUE

Venue for this suit for breach of a written contract is permissive in El Paso County under Texas Civil Practice & Remedies Code section 15.035(a) because this county was identified as the place for an obligation under the contract to be performed.

## V.
## CONDITIONS PRECEDENT

All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## VI.
## FACTS

On or about December 12, 2020, at 2020 Paseo Del Prado Dr., El Paso County, Texas, Plaintiff and a representative/agent of Defendant's entered into a written contract regarding Plaintiff's 2006 GMC Savana Van for any unexpected vehicle repairs. The 2006 GMC is classified by the manufacturer as a passenger van. The representative/agent at no point through out the initiation and review of the contract advise Plaintiff that the coverage excluded RV's and any vehicle considered to be an RV, subjectively by Defendant. Plaintiff provided the representative/agent with all the details and information required to the coverage of his 2006 GMC Savana Van, including the VIN and complete description. Plaintiff complied with all conditions precedent regarding the purchase of the policy and made all payments in accord with the agreement and then was not treated properly under the law.

Plaintiff decided to take a trip, and his 2006 GMC Savana Van broke down requiring repairs to the engine and/or powertrain. Plaintiff then took his 2006 GMC Savana Van to Casa Buick GMC Body Shop for the necessary repairs, an authorized GMC dealer. A claim was opened through Defendant. Shortly afterwards Plaintiff was notified that the claim was denied due to the 2006 GMC Savana Van being considered an RV by the Defendant. Plaintiff was then charged for the repairs to his 2006 GMC Savana Van by Casa Buick GMC Body Shop due to the denial for the repairs by Defendant. Plaintiff made numerous attempts to resolve the bad faith and unconscionable actions from Defendant.

## VII.

## COUNT ONE
## BREACH OF CONTRACT

On December 12, 2020, Plaintiff and a representative/agent of Defendant executed a valid and enforceable written contract. Plaintiff attaches a copy of the contract as Exhibit "A" and incorporates it by reference. The contract provided that Plaintiff would make monthly payments of $109.99 beginning December 12, 2020, and that Defendant would cover repairs to Engine, Transmission, Cooling System, Transfer Unit (4x4), Drive Axle, Air Conditioning, fuel system, alternator, starter, power window motors, seals and gaskets.

Plaintiff fully performed Plaintiff's contractual obligations by paying the necessary fees, signing and returning the contract, and providing all necessary information. *Weitzul Constr., Inc. v. Outodoor Environs*, 849 S.W.2d 359, 363 (Tex.App.—Dallas 1993, writ denied) Plaintiff satisfied the essential elements of the contract. *See Garcia v. Kastner Farms, Inc.*, 789 S.W.2d 656, 660-61 (Tex.App.—Corpus Christi 1990, no writ. *See Uhlir v. Golden Trianle Dev. Corp.*, 763 S.W.2d 512, 514 (Tex.App.—Fort Worth 1988, writ denied); *Matador Drilling Co. v. Post*, 662 F.2d 1190, 1195 (5th Cir.1981)

Defendant breached the contract by failing to disclose that they consider Plaintiff's vehicle to be an RV, therefore defrauding Plaintiff into a contract they did not intend to honor. Defendant had sufficient time prior to the claim to reject coverage, however, failed to do so, and only denied coverage after a claim occurred.

Defendant's breach caused injury to Plaintiff, which resulted in the following damages: Plaintiff was responsible for the repairs to his 2006 GMC Savana Van in the full amount of Eight Thousand Two Hundred Twenty-Four Dollars and Fifty-Six Cents ($8,224.56) plus the loss of use and enjoyment of his 2006 GMC Savana Van.

Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

## VIII.
## COUNT TWO
## DTPA CLAIM

Plaintiff is a consumer under the DTPA because Plaintiff is a individual who sought services by purchase.

Defendant is a corporation that can be sued under the DTPA.

Defendant violated the DTPA when Defendant engaged in false, misleading, or deceptive acts or practices that Plaintiff relied on to Plaintiff's detriment. Specifically, Defendant (1) caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (2) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; (3) using deceptive representations or designations of geographic origin in connection with goods or services; (4) advertising goods or services with intent not to sell them as advertised; (5) misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction; and (6) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Defendant violated the DTPA when Defendant engaged in an unconscionable action or course of action that, to Plaintiff's detriment, took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Specifically, Defendant sold a policy to Plaintiff for coverage to his 2006 GMC Savana Van with the intention of not honoring any repairs Plaintiff's vehicle may require.

Defendant violated the DTPA when Defendant used or employed an act or practice in violation of Texas Insurance Code Chapter 541.051. Specifically, Defendant made false or misleading statements regarding the coverage provided to Plaintiff's 2006 GMC Savana Van.

Plaintiff gave Defendant notice as required by Texas Business & Commerce Code section 17.505(a). Attached as Exhibit "B" is a copy of the notice letter sent to Defendant, which is incorporated by reference.

Defendant's wrongful conduct was a producing cause of Plaintiff's injury, which resulted in the following damages: economic and mental-anguish damages.

Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

Mental-anguish damages: Defendant acted knowingly, which entitles Plaintiff to recover mental-anguish damages under Texas Business & Commerce Code section 17.50(b)(1). *City of Tyler v, Likes*, 962 S.W.2d 489, 498 n.1 (Tex. 1997); *see Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 564 (Tex. 2002)

Plaintiff's 2006 GMC Savana Van broke down and Plaintiff attempted to use the coverage which he had been paying on for his vehicle. To his surprise they denied the claim alleging that his vehicle was considered an RV and leaving Plaintiff to resolve the repairs on his own account.

Additional damages. Defendant acted knowingly, which entitles Plaintiff to recover treble economic damages under Texas Business & Commerce Code section 17.50(b)(1). Defendant knowingly sold a policy to Plaintiff that would not cover any repairs to his 2006 GMC Savana Van. Defendant has been collecting funds from Plaintiff with no intention to cover any repairs and claim that the reason for the denial is due to Plaintiff's vehicle being considered an RV.

Additional damages. Defendant acted intentionally, which entitles Plaintiff to recover treble economic and mental-anguish damages under Texas Business & Commerce Code section 17.50(b)(1). When the need for Plaintiff to use the coverage purchased, Defendant denied any and all repairs necessary leaving Plaintiff to resolve the outstanding bill.

Attorney fees. Plaintiff is entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Texas Business & Commerce Code section 17.50(d).

## IX.
## COUNT THREE
## FRAUD BY NONDISCLOSURE

Defendant failed to disclose material facts related to the actual coverage on the policy and exclusions for certain type of vehicles. Defendant failed to disclose to Plaintiff that his 2006 GMC Savana Van would be considered an RV and would not be covered under any policy backed by Defendant.

Defendant had a duty to disclose the information to Plaintiff because Defendant sold the policy to Plaintiff.

The information was material because had Plaintiff known that his 2006 GMC Savana Van was considered an RV under Defendant's policy, Plaintiff would have never entered into the contract with Defendant, and would have purchased a warranty elsewhere, that would have properly covered the loss. Defendant, although possessing all the information on the vehicle, entered into the contract, after reviewing all the information from the Plaintiff. It was only after a claim was filed that defendant fraudulently denied

the claim and claimed there was no coverage.

Defendant knew Plaintiff was ignorant of the information and did not have an equal opportunity to discover the truth.

Defendant deliberately remained silent and did not disclose the information to Plaintiff.

By deliberately remaining silent, Defendant intended for Plaintiff to act without the information and enter into a contract with Defendant.

Plaintiff justifiably relied on Defendant's deliberate silence. Plaintiff was assured that all major repairs would be covered for his 2006 GMC Savana Van, enticing him into a contract that would not be valid for Plaintiff's vehicle.

By deliberately remaining silent, Defendant proximately caused injury to Plaintiff, which resulted in the following damages:

Plaintiff vehicle required replacement of engine and other related parts, covered under the policy, as evidenced in Exhibit "C".

## X.
## COUNT FOUR
## COMMON-LAW FRAUD

In addition to other counts, Defendant committed common-law fraud. Defendant made a representation to the Plaintiff regarding the coverage for his 2006 GMC Savana Van. The representation was false and Defendant knowingly pursued to entice Plaintiff into entering a contract with Defendant. Defendant made the representation with the intent that Plaintiff would act on it and relied on the representation. Plaintiff was injured from the Defendant's representation.

## XI.
## COUNT FIVE
## NEGLIGENT MISREPRESENTATION

In the alternative to other counts, Defendant committed negligent misrepresentation.

Defendant made a representation to Plaintiff in the course of Defendant's business or in a transaction

in which Defendant had a pecuniary interest.

Defendant supplied false information to Plaintiff enticing Plaintiff into a contract with Defendant.

Defendant failed to use reasonable care in obtaining or communicating information to Plaintiff.

Plaintiff justifiably relied on the representation by Defendant.

Defendant's negligent misrepresentation proximately caused Plaintiff injuries.

## XII.
## COUNT SIX
## EQUITABLE RELIEF

In the alternative to monetary damages, Plaintiff seeks the equitable relief of specific performance of the contract. *See Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468, S.W.3d 557, 574 (Tex. App.—San Antonio 2014, pet. Denied); *Cate v. Woods*, 299 S.W.3d 149, 152 (Tex.App.—Texarkana 2009, no pet.); *Smith v. Dass, Inc.* 283 S.W.3d 537, 542 (Tex.App.—Dallas 2009, no pet.); *Carl M. Archer Trust v. Tregellas*, ___S.W.3d___ (Tex.2018) (No. 17-0093; 11-16-18)

## XIII.
## DAMAGES

As a direct and proximate result of Defendant's breach, Plaintiff suffered the following damages.

a.    The amount that remains due to Plaintiff under the terms of the contract.

b.    Reasonable expenses in reliance on Defendant's performance of the contract.

c.    Loss of net profits.

d.    Damages under a liquidated-damages clause in the contract.

### ATTORNEY FEES

As a result of Defendant's breach, Plaintiff retained an Attorney and seeks reimbursement for his reasonable attorney fees, as authorized by Federal Rules Ch.2-B §9.

### PRAYER

For these reasons, Plaintiff asks for judgment against Defendant for the following:

a. $8,224.56 for damages resulting from Defendant's breach.

b. Specific Performance.

c. Prejudgment and postjudgment interest.

d. Court costs.

e. $2,500 for reasonable Attorney fees.

f. All other relief to which plaintiff is entitled.

Respectfully submitted,

Law Office of JEFF D. RAGO

/s/ Jeff D. Rago

JEFF D. RAGO
*Attorney at Law*
Bar Number 00786182
813 Myrtle Avenue
El Paso, Texas 79901
Telephone (915) 533-2535
Facsimile (915) 881-4506
E-mail: ragolaw@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to Christopher G. Garcia and BB. David L. Foster, attorneys for Defendant at Locke Lord LLP, 300 Colorado Street, Ste. 2100, Austin, Texas 78701, via E-Filing on August 3, 2023.

/s/ Jeff D. Rago

JEFF D. RAGO

EXHIBIT "A"

*Welcome to the*



# Convenience is just an app away.

All your contact information and benefits in one easy to use place.






### Download the app and get instant access to:

- CarShield Rewards *(Discounts on great places you're already shopping)*
- Request 24/7 Roadside Assistance
- Get Coverage Details
- File A Claim
- Contact Customer Service
- Download or Email Your Contract
- Even Make A Payment

Joseph Manssor,

Congratulations!  Your valuable mechanical breakdown protection is detailed in the enclosed contract booklet.  Please look it over and call with any questions you may have. Thank you for your purchase; we look forward to servicing your protection needs.  Please call us for a quote on any other vehicle in your household, as multi vehicle discounts may apply.

Be sure to familiarize yourself with the coverage, maintenance requirements, and procedures in the event of a mechanical breakdown.  Proper maintenance of your vehicle will contribute to a trouble free driving experience.

We encourage you to store your new service agreement in your vehicle as it may be needed in the event of a breakdown.

Welcome to our family of vehicle owners that have the peace of mind and financial security of mechanical breakdown protection.

**ADMINISTRATOR:**
American Auto Shield, Llc
1597 Cole Blvd Suite 200
Lakewood, CO  80401
Claims:  800-856-7884
Roadside:  866-222-7869

**MARKETER/SELLER:**
CARSHIELD
503 Pearl Drive
St. Peters, MO 63376
Customer Service:
636-542-5798
Toll Free: 800-587-4960

COVERAGE SUMMARY
# Powertrain Gold

## Covered Components

- Engine
- Transmission
- Cooling System
- Transfer Unit (4×4)
- Drive Axle
- Air Conditioning

- Fuel System
- Alternator
- Starter
- Power Window Motors
- Seals and Gaskets
  Seals and gaskets are covered only in conjunction with the repair and replacement of a covered part. Leaking seals and gaskets as "stand alone" repairs are not covered.

Covered items may be subject to certain terms and conditions. Please consult your attached contract for specific details and exclusions as not all parts in a component group are covered. The Terms and Conditions provided within this coverage book are the sole legal benefits.

**WCS05PG**

**Month-to Month Vehicle Service Contract**
**Declarations Page**


AMERICAN
AUTO·SHIELD

Administered By:
American Auto Shield, LLC
1597 Cole Blvd Suite 200
Lakewood, CO 80401
**Phone: 1-800-856-7884**
Fax: 1-303-420-7543

## CONTRACT #: MRF3469358 **Series 001**

### PURCHASER INFORMATION (YOU & YOUR)
Joseph Manssor
2020 Paseo Del Prado Dr
El Paso, TX 79936-3737
915-588-9084

### OBLIGOR
American Auto Shield, LLC
1597 Cole Blvd Suite 200
Lakewood, CO 80401
720-376-6882 or 800-856-7884

### SALES PERSON (COMPANY)
CARSHIELD
503 Pearl Drive
St. Peters, MO 63376
636-542-5798 or Toll Free: 800-587-4960
**Seller ID #** 500405D

### VEHICLE INFORMATION
**VIN:** 1GDFG15T561116761
**Year:** 2006
**Make:** GMC
**Model:** SAVANA RV 1500

### PLAN INFORMATION

**Coverage:** Monthly Powertrain Gold w/ Labor & Turbo

**Term Months:** 1      **Term Miles:** Unlimited

**Waiting Period:** Section C Coverage: No Waiting Period. All Other: 20 Days AND 500 Miles, OR 40 Days AND 250 Miles from the Original Contract Effective Date.

**Contract Effective Date:** 12/12/2020

Renews in monthly increments (see Section I for details)
**Initial Expiration Date:** 01/11/2021 Midnight EST

**Odometer Reading:** 144,048

**Expiration Miles:** Unlimited

**Monthly Payment$** 109.99

**Vehicle Class:** 3

**Deductible:** $ 100

**Plan Type:** AUPTGOLD

**Add'l Options:** MLR

**Surcharges:**

MONTH to MONTH PROVISIONS: This contract is optionally renewable on a monthly basis by US or YOU. Unless we have given you written notice of our intent not to renew, you may renew by paying the monthly charge shown above on the same day of the month as the original contract effective date. The waiting period shall not apply for renewal terms provided payment is received within 15 days of expiration. The series number of your contract changes every month to reflect the renewal effective date. If you wish to receive a Declaration Page for subsequent months, please contact your Vendor named above.

The CONTRACT purchaser, whose signature appears below, acknowledges that: the information contained above is, to the best of YOUR knowledge, true; and agrees to the terms and conditions set forth in the CONTRACT. Neither the VENDOR, OBLIGOR, nor the ADMINISTRATOR authorizes anyone to create for them any obligation or liability that does not appear in writing in the CONTRACT. YOU agree to maintain the Covered VEHICLE in accordance with the Manufacturer's and CONTRACT'S stated periodic maintenance requirements and keep all receipts of such maintenance service. YOU understand that prior authorization from the ADMINISTRATOR must be received before services are performed under the CONTRACT. COVERAGE is not afforded for the "Extra Cost Items" items listed above unless the corresponding box(es) is/are marked on the ADMINISTRATOR'S copy of this CONTRACT. The purchase of this CONTRACT is not required in order to obtain financing for the VEHICLE. This CONTRACT is neither an insurance policy nor a seller's warranty. This CONTRACT may run concurrent with and is secondary to any applicable manufacturer's warranty. This CONTRACT applies only to the above described VEHICLE.

The aggregate limit of liability, for each one month CONTRACT TERM of all claims and benefits shall never exceed the NADA Average Retail Value, or other independently published guide if no NADA vehicle value is available, at the time immediately preceding the Breakdown or Failure or $10,000, whichever is greater.

| /s/ Allen Thigpen | | CARSHIELD | |
|---|---|---|---|
| Phone Authorized Agent | 12/12/2020 | | 12/12/2020 |
| Contract Purchaser's Signature (You) | Date | Vendor's Signature | Date |



American Auto Shield, LLC
1597 Cole Blvd • Suite 200
Lakewood CO 80401-3418
720-376-6882 or 800-856-7884

## POWERTRAIN PLUS (GOLD) COVERAGE, MONTH-TO-MONTH, WITH ROADSIDE ASSISTANCE

In consideration of the payment made by YOU of the amount specified on the DECLARATIONS PAGE, and in reliance upon the warranties and representations made by YOU, the ADMINISTRATOR agrees to pay for the repair or replacement of COVERED PARTS due to MECHANICAL BREAKDOWN OR FAILURE sustained during the contract period. COVERAGE provided by the ADMINISTRATOR to YOU is subject to the Definitions, Conditions, Exclusions, Limits, and all provisions outlined in YOUR CONTRACT.

**NO PERSON HAS THE AUTHORITY TO CHANGE THIS CONTRACT OR TO WAIVE ANY OF ITS PROVISIONS. THIS CONTRACT IS FOR THE SOLE BENEFIT OF THE PURCHASER NAMED ON THE DECLARATIONS PAGE OF THE CONTRACT AND APPLIES ONLY TO THE VEHICLE DESCRIBED ON THE DECLARATIONS PAGE OF THIS CONTRACT.**

## A. DEFINITIONS

The following terms have specific meaning when capitalized and used within this CONTRACT:

1. **ADMINISTRATOR, SERVICE CONTRACT PROVIDER, OBLIGOR:** Means American Auto Shield, LLC, the party obligated under this CONTRACT.

   American Auto Shield, LLC
   1597 Cole Boulevard • Suite 200
   Lakewood CO 80401-3418
   Phone: 720-376-6882 or 800-856-7884    Fax: 303-420-7543

   This is who YOU contact for any CONTRACT MECHANICAL BREAKDOWN OR FAILURE for covered repairs, cancellations and any other questions regarding YOUR CONTRACT. **Important Notice: ADMINISTRATOR'S authorization for CONTRACT MECHANICAL BREAKDOWN OR FAILURE for covered repairs and additional benefits is always required prior to any service being performed. See Section F. for additional information and instructions.**

2. **COMMERCIAL VEHICLE:** Any VEHICLE that is used for business purposes (to generate financial income, full or part-time). See Section G. regarding additional definitions, underwriting availability and exclusions.

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION
CALL 720-376-6882 or 800-856-7884**

3. **CONTRACT:** Means this vehicle service contract COVERAGE that YOU have selected and purchased from the VENDOR, as listed on the DECLARATIONS PAGE of the CONTRACT.

4. **COVERAGE:** Means the component protection COVERAGE YOU have selected and purchased under this CONTRACT.

5. **COVERED PART:** Means any part or component of the VEHICLE that is not specifically excluded from COVERAGE under this CONTRACT (see Section B., titled "THESE PARTS ARE COVERED").

6. **DECLARATIONS PAGE:** Means the page of this CONTRACT titled "DECLARATION PAGE," that specifies the purchaser information, the VENDOR information, the lien holder information, the plan information, and other key information specific to YOUR CONTRACT.

7. **DEDUCTIBLE:** Means the amount YOU must pay for repairs of COVERED PARTS per visit, as listed on the DECLARATIONS PAGE of this CONTRACT.

8. **INITIAL TERM:   Means the first month after the original CONTRACT effective date.**

9. **MECHANICAL BREAKDOWN OR FAILURE:** Means the MECHANICAL BREAKDOWN OR FAILURE of any original or like replacement part covered by YOUR CONTRACT to work as it was designed to work in normal service, providing the VEHICLE has received required maintenance as defined in this CONTRACT, in Section E., titled "VEHICLE MAINTENANCE REQUIREMENTS," and does not include worn parts that are within manufacturer tolerances.  Please refer to the wording under exclusions for a listing of conditions under which the FAILURE of a COVERED PART is not considered a covered MECHANICAL BREAKDOWN OR FAILURE.  (See Section D., titled "EXCLUSIONS.")

10. **REPAIR FACILITY:** Means any licensed automotive REPAIR FACILITY capable of performing repair services to a COVERED PART, approved by the ADMINISTRATOR, and at which YOU seek to acquire service under this CONTRACT.

11. **RENEWAL TERM: Means each succeeding month for which payment has been received after the INITIAL TERM. Each RENEWAL CONTRACT shall have a Series Number one digit higher than the Series Number of the previous One Month Contract.**

12. **VEHICLE:** Means the VEHICLE described in the DECLARATIONS PAGE of YOUR CONTRACT.

13. **VENDOR:** Means the company from whom YOU purchased this CONTRACT. VENDOR information can be found on the DECLARATIONS PAGE of this CONTRACT.

14. **WAITING PERIOD:** Means the period specified on the DECLARATIONS PAGE.

15. **WE, US, OUR:** Means American Auto Shield, LLC.

16. **YOU, YOUR:** Means the CONTRACT purchaser named on the DECLARATIONS PAGE of YOUR CONTRACT.


**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION**
**CALL 720-376-6882 or 800-856-7884**

**B.    THESE PARTS ARE COVERED**

**This CONTRACT covers ONLY the components/parts listed below:**

1.    **ENGINE (Gas or Diesel):**  All internally lubricated parts within the Engine, including engine mounts, timing belt, timing gears, cylinder head intake and exhaust valves, valve springs, valve guides, valve seats and oil pump.  The engine block and heads are covered ONLY if damage is caused by a FAILURE of any internally lubricated part within the Engine.

2.    **TRANSMISSION (Automatic or Standard):**  All internally lubricated parts within the Transmission, including the torque converter and transmission mounts.  The transmission case is covered ONLY if damage is caused by a FAILURE of any internally lubricated part within the Transmission. Electronic components, regardless of location, are not covered.

3.    **TURBO CHARGER:** All internally lubricated parts of the vehicle manufacturer installed turbo-charger or supercharger. The housing is covered ONLY if damaged by the failure of a lubricated internal part.

4.    **COOLING SYSTEM:**  Radiator; water pump and housings.

5.    **TRANSFER UNIT (4x4):**  All internally lubricated parts within the Transfer Case. The transfer case is covered ONLY if damage is caused by a FAILURE of any internally lubricated part within the Transfer Unit. Electronic components, regardless of location, are not covered.

6.    **DRIVE AXLE (Front & Rear)**:  All internally lubricated parts within the Drive Axle housings, including the axle shafts and constant velocity joints.  The differential housing, transaxle housing and final drive housing are covered ONLY if damage is caused by a FAILURE of any internally lubricated part within the Drive Axle. Electronic components, regardless of location, are not covered.

7.    **AIR CONDITIONING:**  Condenser, compressor, evaporator, expansion valve, accumulator/receiver dryer, orifice tube and blower motor.

8.    **ELECTRICAL:**  Alternator, voltage regulator, starter motor, ignition switch, front and rear window wiper motors, head lamp switch, turn signal switch, rear defogger switch, air conditioning blower switch, power window motors, and power door lock actuators/switches.

9.    **FUEL SYSTEM:** Fuel delivery pump, fuel injection pump, fuel injectors and metal fuel delivery lines.

10.    **SEALS AND GASKETS:**  Seals and Gaskets are covered only in conjunction with the repair or replacement of the COVERED PARTS listed in 1 through 9 above.  **Leaking Seals and Gaskets (as "stand alone" repairs) are not covered by the CONTRACT.**

11.    See attached Addendum 1 for any ADDITIONAL COVERAGES that may apply to this CONTRACT.

ONLY THOSE PARTS LISTED ABOVE AND IN ADDENDUM 1, IF APPLICABLE, ARE COVERED PARTS.  ANY PARTS NOT LISTED ARE NOT COVERED BY YOUR CONTRACT.

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION
CALL 720-376-6882 or 800-856-7884**

## C. ADDITIONAL BENEFITS

The following ADDITIONAL BENEFITS **for YOUR covered VEHICLE** are provided with YOUR CONTRACT, except where prohibited by law. These benefits do <u>apply</u> during the WAITING PERIOD:

1.  ROADSIDE ASSISTANCE: YOUR CONTRACT provides YOU with an emergency road service program when needed, 24 hours a day, 365 days a year. Emergency Roadside services are provided by Roadside Protect, Inc. by Signature's Nationwide Auto Club, Inc. If YOUR VEHICLE becomes disabled, call **866-222-7869** and a service vehicle will be dispatched to YOU. There is a combined Five Hundred Dollar ($500.00) maximum limit for such emergency road service benefits as listed below for the term of YOUR CONTRACT. YOUR CONTRACT DEDUCTIBLE does not apply to roadside assistance. YOUR ROADSIDE ASSISTANCE BENEFITS include:

    a.  TOWING SERVICE: If YOUR VEHICLE cannot be started or driven, YOU are covered up to One Hundred Twenty-Five Dollars ($125.00) per occurrence for towing expenses.

    b.  EMERGENCY TIRE SERVICE: If YOUR VEHICLE has a flat or damaged tire, YOU are covered up to a maximum of One Hundred Twenty-Five Dollars ($125.00) per occurrence for service to change an inflated spare provided by YOU.

    c.  LOCKOUT SERVICE: If YOU misplace, break, or accidentally lock YOUR keys in YOUR VEHICLE, dispatch will provide locksmith or emergency VEHICLE service to assist YOU. Lockout service is limited to One Hundred Twenty-Five Dollars ($125.00) per occurrence. The cost of new keys is not covered.

    d.  BATTERY SERVICE: If the battery for YOUR VEHICLE fails, battery jump start services will be provided up to a maximum of One Hundred Twenty-Five Dollars ($125.00) per occurrence.

    e.  FUEL DELIVERY SERVICE: In case it is necessary for the operation of YOUR VEHICLE, a service VEHICLE will deliver oil, fuel, or water to YOU. YOU are responsible for the cost of the oil and fuel. In the event that local state regulations prohibit the delivery of flammable materials (e.g., gas), YOU may have YOUR VEHICLE towed to the nearest gas station as provided under the "Towing Service" paragraph above. Fuel Delivery services are limited to One Hundred Twenty-Five Dollars ($125.00) per occurrence.

    f.  WINCHING: YOU are covered for winching services provided YOUR VEHICLE is within one hundred (100) feet of a public road (excludes off-road driving). Winching services are limited to One Hundred Twenty-Five Dollars ($125.00) per occurrence.

2.  CAR RENTAL REIMBURSEMENT: If YOUR VEHICLE becomes inoperable and must remain at the REPAIR FACILITY and the MECHANICAL BREAKDOWN or

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION**
**CALL 720-376-6882 or 800-856-7884**

FAILURE has been authorized by the ADMINISTRATOR for four (4) or more hours of labor, the ADMINISTRATOR agrees to reimburse YOU for rental car transportation from a licensed vehicle rental company (except where prohibited by law). Such expense shall be limited to Forty Dollars ($40.00) per calendar day not to exceed Two Hundred Eighty Dollars ($280.00) per occurrence including delays associated with ADMINISTRATOR required inspections or the shipment of parts needed for covered repairs. WE reserve the right to select the rental car company that YOU use. YOUR car rental benefit is based upon the number of labor hours required to repair YOUR VEHICLE as listed in a nationally recognized labor time guide selected by the ADMINISTRATOR. Each additional eight (8) hours of authorized labor qualifies YOU for an additional day of rental reimbursement, subject to the Forty Dollars ($40.00) per day and Two Hundred Eighty Dollars ($280.00) per occurrence limit of liability, as well as the aggregate limit of liability for this Contract. Rental car benefits require prior authorization by the ADMINISTRATOR.

3.  TRIP INTERRUPTION REIMBURSEMENT: If YOUR VEHICLE becomes inoperable more than one hundred (100) miles from YOUR home and must remain at the REPAIR FACILITY overnight as a result of a MECHANICAL BREAKDOWN OR FAILURE authorized by the ADMINISTRATOR, WE will reimburse YOU for motel and restaurant expenses up to Fifty Dollars ($50.00) per day for a maximum of three (3) days. The maximum benefit per occurrence is One Hundred Fifty Dollars ($150.00) and total trip interruption benefits are subject to the aggregate limit of liability for this CONTRACT. To receive motel and restaurant reimbursement, YOU must supply US with receipts from the providers of such services.

## D.  EXCLUSIONS

**The following items are NOT covered by this CONTRACT:**

1.  **REPAIR OR REPLACEMENT OF ANY PART(S) THAT ARE NOT LISTED AS "COVERED PARTS" IN SECTION B OF THIS CONTRACT;**
2.  **MECHANICAL BREAKDOWN OR FAILURE:**
    a.  **WHEN REPAIRS ARE PERFORMED WITHOUT PRIOR AUTHORIZATION FROM THE ADMINISTRATOR, EXCEPT FOR EMERGENCY REPAIRS COMPLETED IN CONFORMITY WITH THE PROVISIONS AND SUBJECT TO THE LIMITATIONS SET FORTH IN SECTION F, PARAGRAPH 11;**
    b.  **CAUSED BY A LACK OF MAINTENANCE OR MAINTENANCE ITEMS SUCH AS, BUT NOT LIMITED TO, CONSTANT VELOCITY JOINT BOOTS, TIMING BELT, BRAKE PADS OR SHOES, FILTERS, OIL AND OTHER FLUID CHANGES ;**
    c.  **CAUSED BY ACTS OF NATURE, OR BY ANY EXTERNAL CAUSE SUCH AS, BUT NOT LIMITED TO: COLLISION, FIRE OR SMOKE, THEFT, FREEZING, VANDALISM, RIOT OR EXPLOSION, TERRORISM,**

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION
CALL 720-376-6882 or 800-856-7884**

LIGHTNING, EARTHQUAKE, WINDSTORM, HAIL, VOLCANIC ERUPTION, WATER OR FLOOD, BREAKAGE OF GLASS, FALLING OBJECTS, OR NUCLEAR CONTAMINATION;

d.  OF ANY OTHERWISE COVERED PART THAT DID NOT MEET MANUFACTURER'S SPECIFICATIONS, INCLUDING MODIFICATIONS AND/OR ALTERATIONS TO THE VEHICLE; MECHANICAL BREAKDOWN OR FAILURE OF ANY OTHERWISE COVERED PART THAT IS DIRECTLY OR INDIRECTLY RELATED TO A PART OR SYSTEM THAT DID NOT MEET MANUFACTURER'S SPECIFICATION OR HAS BEEN OTHERWISE MODIFIED OR ALTERED, SUCH PARTS AND MODIFICATIONS INCLUDE BUT ARE NOT LIMITED TO: HEADERS, ALTERED IGNITION SYSTEM, ALTERED ENGINE MANAGEMENT SYSTEMS, FREE FLOW EXHAUST SYSTEM, AFTERMARKET SUNROOFS, AFTER MARKET ALARM SYSTEMS, SNOW PLOWS, OVERSIZED OR UNDERSIZED TIRES, WHEELS OR LIFT AND DROP KITS, WHETHER OR NOT THE VEHICLE WAS PURCHASED WITH SUCH;

e.  IF YOUR VEHICLE IS USED FOR: RACING ON OR OFF ROAD, IN A COMPETITION OR SPEED CONTEST;

f.  IF YOUR VEHICLE IS USED FOR TOWING IN EXCESS OF TWO THOUSAND (2,000) POUNDS UNLESS EQUIPPED WITH A FACTORY APPROVED TOWING KIT AND AUXILIARY TRANSMISSION COOLER, AND THE WEIGHT OF THE TRAILER DOES NOT EXCEED THE VEHICLE MANUFACTURER'S TOWING SPECIFICATION;

g.  IF YOUR VEHICLE IS USED FOR COMMERCIAL PURPOSES EXCEPT WHEN THE VEHICLE IS ELIGIBLE FOR COVERAGE AS DESCRIBED IN SECTION G. "COMMERCIAL VEHICLES" OF YOUR CONTRACT;

h.  OF ANY PART(S), COMPONENT(S), OR REPAIR(S) STATED AS COVERED BY THE MANUFACTURER'S FULL, ORIGINAL OWNER/FIRST RETAIL PURCHASER WARRANTY FOR THE TERM AND MILEAGE OF SUCH COVERAGE TO THE ORIGINAL OWNER/FIRST RETAIL PURCHASER, WHETHER COLLECTIBLE OR NOT, OR CONTINUING MANUFACTURER'S WARRANTY COVERAGE THAT IS TRANSFERABLE TO SUBSEQUENT OWNER WHETHER TRANSFERRED OR NOT;

i.  IF THE COVERED PART IS COVERED BY A MANUFACTURER'S WARRANTY, REPAIRER'S GUARANTEE, OR OTHER SERVICE CONTRACT, OR INSURANCE POLICY OF ANY TYPE THEN SUCH WARRANTY, SERVICE CONTRACT OR INSURANCE SHALL BE PRIMARY AND COVERAGE UNDER THIS CONTRACT SHALL BE SECONDARY;

j.  RELATED TO OPTIONAL COVERAGES OR EQUIPMENT AND/OR USE FOR WHICH A SURCHARGE IS APPLICABLE, UNLESS SUCH SURCHARGE HAS BEEN PAID AND IS NOTED ON THE DECLARATION PAGE;

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION CALL 720-376-6882 or 800-856-7884**

k.  IF IT IS DETERMINED THAT THE ODOMETER IS INACCURATE, HAS EVER BEEN INOPERATIVE, OR HAS BEEN ALTERED SUCH THAT THE VEHICLE'S TRUE MILEAGE CANNOT BE VERIFIED;

l.  THAT IS THE RESULT OF A DEFECT THAT THE VEHICLE MANUFACTURER HAS ANNOUNCED AS THEIR RESPONSIBILITY BY A PUBLIC RECALL, TECHNICAL SERVICE BULLETIN AND/OR SPECIAL POLICY FOR THE PURPOSE OF CORRECTING SUCH A DEFECT;

m.  DUE TO CONTINUED OPERATION AND FAILURE TO PROTECT THE VEHICLE FROM FURTHER DAMAGE ONCE A MECHANICAL BREAKDOWN OR FAILURE HAS OCCURRED;

n.  OF A COVERED PART DAMAGED BY A NON-COVERED PART, OR OF A NON-COVERED PART DAMAGED BY A COVERED PART;

o.  CAUSED BY MISUSE, ABUSE, NEGLIGENCE, INCORRECT COMPUTER PROGRAMMING, EXTERNAL NUTS, BOLTS, FASTENERS, CONTAMINATION OF COOLANT, FUEL, FLUIDS OR LUBRICANTS;

p.  RESULTING FROM OVERHEAT, ENGINE SLUDGE, CARBON, PRE-IGNITION, DETONATION, VARNISH, RUST, CORROSION, FOREIGN OBJECTS, DIRT, DUST, LIQUID, CRACKED RUBBER / NEOPRENE PARTS, DRY-ROT, ROAD CHEMICALS, ABUSE, ALTERATION, OR LACK OF PROPER AND NECESSARY AMOUNTS OF COOLANT, FUEL, FLUIDS OR LUBRICANTS;

q.  PRE-EXISTING CONDITIONS THAT EXISTED PRIOR TO THE LATER OF YOUR CONTRACT PURCHASE DATE OR CONTRACT EFFECTIVE DATE AS LISTED ON YOUR DECLARATIONS PAGE AND THE COMPLETION OF YOUR WAITING PERIOD;

r.  THAT OCCURRED OR IS REPORTED AFTER YOUR CONTRACT EXPIRATION OR CANCELLATION EFFECTIVE DATE;

s.  FOR REPAIR OR REPLACEMENT OF HYBRID ENGINE POWERED VEHICLE BATTERIES OR FOR THE REPAIR OR REPLACEMENT OF PARTS ASSOCIATED WITH HYBRID ENGINE POWERED VEHICLE BATTERIES;

t.  THAT OCCURS AS TO GRADUAL LOSS OF PERFORMANCE AND HAS RESULTED FROM NORMAL OPERATION AND USE (DUE TO VEHICLE MILEAGE AND/OR AGE) SUCH AS, BUT NOT LIMITED TO: VALVE GUIDES, VALVES, PISTON RINGS, TRANSMISSION CLUTCH PACK DISCS AND BANDS. UNLESS WORN BEYOND MANUFACTURER TOLERANCES;

u.  FOR NORMAL EXPANSION/CONTRACTION SEEPAGE OF SEALS AND GASKETS DUE TO AGE/MILEAGE;

v.  WHEN THE MANUFACTURER'S NEW VEHICLE WARRANTY HAS BEEN DETERMINED NULL AND VOID BY THE MANUFACTURER.

3.  STORAGE AND FREIGHT CHARGES;

4.  REPAIRS NECESSITATED BY AN IMPROPER PRIOR REPAIR;

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION
CALL 720-376-6882 or 800-856-7884**

5.  THE COST OF DIAGNOSIS, TEARDOWN, DISASSEMBLY OR ASSEMBLY IF A COVERED MECHANICAL BREAKDOWN OR FAILURE CANNOT BE VERIFIED BY THE ADMINISTRATOR;

6.  ANY ADJUSTMENTS, REPOSITIONING, REFITTING, REALIGNING AND/OR CLEANING, INCLUDING BUT NOT LIMITED TO REPAIRS NECESSARY TO CORRECT: TRIM FIT, SQUEAKS, RATTLES, IDLE, WATER LEAKS OR WIND NOISE;

7.  REPAIRS IF YOUR VEHICLE IS:  A NON-U.S. SPECIFICATION MODEL, IS RATED OVER ONE TON PAYLOAD CAPACITY, IS A LEMON LAW BUYBACK VEHICLE, IS A GREY MARKET VEHICLE OR HAS EVER HAD A TITLE INDICATION OF SALVAGE, JUNK, BRANDED OR OTHER DESIGNATION INDICATING THAT THE VEHICLE HAD BEEN STOLEN, WRECKED, DESTROYED, WATER DAMAGED, OR OTHERWISE DAMAGED TO THE EXTENT THAT IT WAS CONSIDERED TO BE UNECONOMICAL TO REPAIR;

8.  NORMAL MAINTENANCE ITEMS, PARTS, AND PROCEDURES SUCH AS, BUT NOT LIMITED TO:  ENGINE TUNE-UPS, OIL CHANGES, BRAKE PADS AND SHOES, FUSES AND FUSIBLE LINKS, FUSE BOXES, COMPUTER PROGRAMMING, WHEEL OR SUSPENSION ALIGNMENT, FASTENING HARDWARE (EXTERNAL NUTS, BOLTS, SPRINGS, BRACKETS, ETC.), INJECTOR CLEANING, SHOP SUPPLIES, DISPOSAL FEES AND OTHER MISCELLANEOUS SHOP CHARGES;

9.  LUBRICANTS, COOLANTS AND FLUIDS UNLESS REQUIRED IN CONNECTION WITH A COVERED REPAIR;

10. ANY PART THAT HAS NOT BROKEN OR FAILED, BUT FOR WHICH A REPAIR FACILITY RECOMMENDS OR REQUIRES REPAIR OR REPLACEMENT;

11. THE REPAIR OR REPLACEMENT OF VALVES AND/OR PISTON RINGS FOR THE PURPOSE OF RAISING THE ENGINE'S COMPRESSION OR CORRECTING OIL CONSUMPTION, STICKING OR STUCK RINGS, WHEN MECHANICAL BREAKDOWN OR FAILURE HAS NOT OCCURRED, INCLUDING WHEN SUCH CONDITION RESULTS FROM EXCESSIVE CARBON BUILD-UP.

12. ANY REPAIR IF VERIFIABLE RECEIPTS, AS REQUIRED IN SECTION E. VEHICLE MAINTENANCE REQUIREMENTS," ARE NOT PROVIDED IF REQUESTED BY THE ADMINISTRATOR;

13. ANY COMPONENTS, PARTS OR COSTS INVOLVED WITH UPDATING, BETTERMENT, OR RETROFITTING OF COVERED COMPONENTS OR SYSTEMS OF YOUR VEHICLE FOR ANY REASON INCLUDING BUT NOT LIMITED TO: PRODUCT CHANGES, LACK OF PRODUCT AVAILABILITY, OR GOVERNMENT REGULATIONS;

14. REPAIRS TO CURE FLUID/OIL LUBRICANT SEEPAGE;

15. SHOP SUPPLIES AND HAZARDOUS WASTE REMOVAL ARE EXCLUDED;

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION**
**CALL 720-376-6882 or 800-856-7884**

16. RETROFITS OR REPLACEMENTS OF ANY COMPONENTS CAUSED BY OR DUE TO COMPLIANCE WITH LAW OR LEGISLATION, AND INCLUDING EMISSION CONTROL EQUIPMENT AND SENSORS ARE EXCLUDED;

17. IF IT IS DISCOVERED THAT A CONTRACT IS ERRANTLY SOLD TO YOU ON AN INELIGIBLE VEHICLE, THEN A FULL REFUND OF THE COST OF THE CONTRACT SHALL BE MADE TO YOU;

18. LOSS OF TIME, INCONVENIENCE, DAMAGE TO PROPERTY OR OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGE THAT RESULTS FROM VEHICLE THEFT, MECHANICAL BREAKDOWN OR FAILURE, AND INJURY AND/OR DEATH OF ANY PERSON REGARDLESS IF THE DAMAGE OR INJURY WAS CAUSED BY YOUR VEHICLE OR ITS PARTS EITHER BEFORE OR AFTER REPAIRS HAVE BEEN MADE;

19. VEHICLES NOT INCLUDED IN ADMINISTRATOR'S RATE AND CLASS GUIDES, INCLUDING BUT NOT LIMITED TO MOTOR HOMES, MOTORCYCLES, RECREATIONAL VEHICLES, VEHICLES USED FOR AGRICULTURAL PURPOSES, EXOTIC VEHICLES, VEHICLES EQUIPPED WITH A SNOW PLOW, BRACKET AND/OR CONTROLS ARE NOT ELIGIBLE FOR COVERAGE UNDER THIS CONTRACT;

20. FAILURES TO THE AIR BAGS, SEAT BELTS OR SUPPLEMENTAL RESTRAINT SYSTEMS.

## E. VEHICLE MAINTENANCE REQUIREMENTS

This CONTRACT requires VEHICLE maintenance to be performed as follows:

1. VEHICLE maintenance services are to be performed as recommended by YOUR VEHICLE manufacturer. Contact YOUR local dealer or the manufacturer's website with the make and model of YOUR VEHICLE, or the ADMINISTRATOR, if YOU have questions about required VEHICLE maintenance.

2. **Keep all receipts for maintenance performed on YOUR VEHICLE,** as YOU may, at OUR sole discretion, be required to present the receipts in the event of MECHANICAL BREAKDOWN OR FAILURE. If requested, proof of required service, including **verifiable receipts** showing date, mileage, and VEHICLE identification number of the VEHICLE at the time of service, must be presented in order to have repairs authorized on YOUR VEHICLE. If YOU perform your own maintenance, YOU must maintain a log indicating the date and mileage of each service performed and copies of receipts for oil, fluids, filters and other supplies used. YOU may, at OUR sole discretion, be required to provide a copy of the maintenance log and receipts in the event of a claim, and YOUR failure or inability to do so may result in a denial of COVERAGE in accordance with this section.
**COMMERCIAL VEHICLES have special service requirements. See Section G. in this CONTRACT, titled "COMMERCIAL VEHICLES."**

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION
CALL 720-376-6882 or 800-856-7884**

**F.  IN THE EVENT OF A MECHANICAL BREAKDOWN OR FAILURE:**

1.  YOU shall protect the VEHICLE from further damage whether or not such MECHANICAL BREAKDOWN OR FAILURE is covered by YOUR CONTRACT. **Any operation of the VEHICLE that results in further damage related to the original MECHANICAL BREAKDOWN OR FAILURE shall be considered negligence on YOUR part and any such further damage shall not be covered under this CONTRACT. YOU are responsible for making sure that all VEHICLE fluids are full and that the oil warning lights/gauges and temperature warning light/gauge are functioning before driving the VEHICLE. YOU are required to safely pull YOUR VEHICLE off of the road and shut off the engine immediately when any of the lights/gauges indicate a problem.**

2.  Present this CONTRACT to the REPAIR FACILITY and call the ADMINISTRATOR, toll free, at **720-376-6882 or 800-856-7884.**

3.  The ADMINISTRATOR will determine the validity of the CONTRACT, i.e., proper owner, proper VEHICLE, that the CONTRACT is still in force, and that payments are current if you enrolled in a payment plan at the time of purchase of this CONTRACT.

4.  YOU are responsible for authorizing and paying for any tear down and/or diagnosis time needed to determine if the VEHICLE has a covered MECHANICAL BREAKDOWN OR FAILURE. This CONTRACT will not cover flat rate charges for diagnosis. If the breakdown is not caused by a covered MECHANICAL BREAKDOWN OR FAILURE, YOU are responsible for payment of the expenses associated with the tear down and diagnosis.

5.  Prior to proceeding with repairs, ensure the REPAIR FACILITY calls the ADMINISTRATOR with an estimate of repairs and receives an authorization code from the ADMINISTRATOR. ADMINISTRATOR will not be liable for repairs performed without prior ADMINISTRATOR authorization, regardless of whether or not you have authorized the REPAIR FACILITY to complete the repairs. **Except for emergency repairs performed in accordance with and subject to the limitations included in Section F. titled "IN THE EVENT OF A MECHANICAL BREAKDOWN OR FAILURE," in Item 11, any repair performed without prior authorization from the ADMINISTRATOR will not be covered.**

6.  The ADMINISTRATOR will verify COVERAGE, confirm the cost of repair using nationally recognized labor guides, authorize repair of COVERED PARTS and labor, and provide the REPAIR FACILITY with an authorization code.

7.  The ADMINISTRATOR reserves the right to inspect YOUR VEHICLE prior to issuing any authorization code to the REPAIR FACILITY. In the event of a dispute between the ADMINISTRATOR and the REPAIR FACILITY, the ADMINISTRATOR reserves the right to move YOUR VEHICLE to a REPAIR FACILITY of the ADMINISTRATOR'S choice.

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION**
**CALL 720-376-6882 or 800-856-7884**

8.  At the ADMINISTRATOR'S election, repair or replacement of COVERED PARTS will be made with parts of like kind and quality, including but not limited to new, re-manufactured, exchanged, or used components.

9.  In-home repair (both self and mobile) is not covered under this CONTRACT. Any payment for the cost of transporting the VEHICLE to a REPAIR FACILITY as a result of an in-home repair effort, or expenses related to correction of ineffective or failed self-repair efforts, is not covered.

10. YOU are responsible for paying any amounts not covered by this CONTRACT, including but not limited to, the DEDUCTIBLE, for each visit to the REPAIR FACILITY.

11. Reimbursement for emergency repairs performed outside of normal business hours may be obtained by YOU only if YOU contact US no later than the first business day after such emergency repairs are performed and such emergency repairs meet the following criteria:

    a.  The MECHANICAL BREAKDOWN OR FAILURE must prevent YOU from safely operating YOUR VEHICLE.

    b.  The need for repair is immediate and the ADMINISTRATOR'S office is closed.

    c.  The MECHANICAL BREAKDOWN or FAILURE must be of a covered component of YOUR VEHICLE.

    d.  The total cost of the repair and/or replacement must not exceed Two Hundred Fifty Dollars ($250.00). For any repair or replacement with a cost exceeding Two Hundred Fifty Dollars ($250.00), YOU must obtain ADMINISTRATOR'S prior authorization as set forth above or any amount in excess of Two Hundred Fifty Dollars ($250.00) will not be covered and will be YOUR responsibility.

12. The ADMINISTRATOR will make payment directly to the REPAIR FACILITY or to YOU for the covered and authorized repairs or additional CONTRACT benefits. The form of payment will be decided by the ADMINISTRATOR.

## G.  COMMERCIAL VEHICLES

1.  This CONTRACT may be available for certain types of COMMERCIAL VEHICLES as long as: (a) the VEHICLE is not rated over one (1) ton payload capacity and; (b) the appropriate surcharge is paid at time of CONTRACT purchase.

2.  Only the following commercial applications are eligible for coverage under this contract: delivery, messenger, route sales or services, inspections/examinations, maintenance or repair, gardening, and carrying hand tools to the job site.

3.  COMMERCIAL VEHICLES are required to follow all original manufacturer's severe service scheduled maintenance and must not exceed maximum towing/load capacities. For specific information, consult YOUR owner's manual or a dealer who sells the make and model of YOUR VEHICLE.

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION**
**CALL 720-376-6882 or 800-856-7884**

4.  VEHICLES used in any commercial manner not provided in Item 2. above are not eligible for COVERAGE. Commercial uses not eligible for coverage include, but are not limited to; taxi, limousine, shuttle, police or other emergency use, security service or any law enforcement agency, snow plowing, and towing.
5.  Any VEHICLE used as a rental or loaner is not eligible for COVERAGE.
6.  VEHICLES rated over one-ton payload capacity and fleet VEHICLES are not eligible for COVERAGE.

## H.  ADDITIONAL INFORMATION

Purchase of this CONTRACT is NOT REQUIRED in order to purchase or obtain financing for the VEHICLE. This CONTRACT is not issued by the manufacturer or wholesale company marketing the VEHICLE. This CONTRACT will not be honored by such manufacturer or wholesale company.

## I.  CONTRACT PERIOD AND RENEWALS

1.  The **First** CONTRACT begins on the CONTRACT effective date and will continue until the expiration date-shown on the CONTRACT DECLARATIONS PAGE.
2.  This CONTRACT is optionally renewable on a monthly basis by US or YOU. **The effective date of the RENEWAL CONTRACT shall be the day immediately after the expiration date of the previous CONTRACT.**
3.  We reserve the right to not renew YOUR CONTRACT. In such case, we will give YOU a ninety (90) day written notice of OUR intent not to renew. On the same day of the month as the initial CONTRACT effective date, YOU may renew for up to ninety (90) days by paying the monthly charge shown on your DECLARATIONS PAGE. If payment is not made within fifteen (15) days of the expiration date, YOUR CONTRACT will not be renewed during the ninety (90) day term.

## J.  TERRITORY

This CONTRACT applies only to a MECHANICAL BREAKDOWN or FAILURE occurring within the Continental United States, Alaska, Hawaii and Canada.

## K.  LIMITATIONS OF LIABILITY

1.  The limit of liability for all claims paid and payable during the INITIAL TERM or during any RENEWAL TERM, shall never exceed the amount stated on the DECLARATIONS PAGE. Liability shall be limited to the reasonable price for repair or replacement of any COVERED PART and the reasonable amount of labor time needed for the repair or replacement of any COVERED PART, as based on a nationally recognized guide as selected by the ADMINISTRATOR (maximum labor rate as specified in Section F. of this CONTRACT, titled "IN THE EVENT OF A MECHANICAL BREAKDOWN OR FAILURE," Item 13). Parts

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION
CALL 720-376-6882 or 800-856-7884**

replacement may include new parts, or parts of like kind and quality, which may include used parts, after-market parts or remanufactured parts, as customarily used in the automobile industry.

2. YOU will be responsible for the cost of all repairs that exceed the aggregate limit of liability under this CONTRACT. The ADMINISTRATOR shall not be required to authorize or pay for any repair amounts if all needed or covered repairs are not performed on YOUR VEHICLE. WE will not be liable to YOU for consequential damages or injuries, nor for any costs or expenses that provide betterment, upgrade, or enhancement to YOU or YOUR VEHICLE. This limit of liability applies regardless of the cause and regardless of the legal theory asserted. There are no warranties that extend beyond the description on the face hereof. The warranties of merchantability and fitness for a particular purpose are expressly excluded and disclaimed.

## L.  SUBROGATION

YOU agree that WE, after honoring a claim on YOUR CONTRACT, have all rights of subrogation against those who may be responsible for YOUR MECHANICAL BREAKDOWN OR FAILURE. YOU shall do whatever is necessary to secure such rights. YOU shall do nothing to prejudice such rights, and **YOU shall execute and deliver to ADMINISTRATOR instruments and papers required to either secure or maintain such rights.** All amounts recovered by YOU, for which YOU were previously reimbursed under YOUR CONTRACT, shall become OUR property or the property of OUR designee and shall be forwarded to the same by YOU, up to the total amount paid by US under YOUR CONTRACT.

## M.  DISPUTE RESOLUTION

Any legal dispute between YOU and ADMINISTRATOR relating to this CONTRACT may be resolved by arbitration. To begin arbitration, either YOU or WE must make a written demand for arbitration within sixty (60) days of ADMINISTRATOR'S final decision. The arbitration will take place before a single arbitrator. It will be administered in keeping with the Conditionally Binding Arbitration Rules ("Rules") of the Better Business Bureau ("BBB") in effect when the Claim is filed. You may get a copy of the BBB's Rules by contacting the BBB at 3801 E. Florida Avenue, Suite 350, Denver CO 80210, by phoning 303-758-2100, or by visiting www.bbb.org. You agree that any arbitration proceeding or litigation will only consider YOUR Claims. Claims by, or on behalf of, other individuals will not be arbitrated or litigated in any proceeding that is considering YOUR Claims. In the event of litigation involving this CONTRACT, venue shall be in the courts of Jefferson County, Colorado. Please refer to the "Individual State Variance Requirement" at the end of YOUR CONTRACT for any added requirements in YOUR state.

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION**
**CALL 720-376-6882 or 800-856-7884**

### N.    TRANSFER OF YOUR CONTRACT

1.    Only the Original CONTRACT Purchaser may transfer this CONTRACT.
2.    The Original CONTRACT Purchaser must contact ADMINISTRATOR and submit ALL of the following information / documentation at time of transfer request in order to transfer the CONTRACT:
    a.    An administrative processing fee of Fifty Dollars ($50.00);
    b.    A completed transfer application (available from the ADMINISTRATOR) initiated by the original CONTRACT purchaser;
    c.    A copy of this CONTRACT;
    d.    A copy of proper documentation evidencing change of ownership and mileage at date of sale, including a notarized bill of sale signed by both parties; and
    e    The original CONTRACT holder must provide the new owner and the ADMINISTRATOR with copies of all receipts evidencing required maintenance has been performed as described in Section E., titled "VEHICLE MAINTENANCE REQUIREMENTS.
3.    This CONTRACT may not be transferred to another VEHICLE.  It may only be transferred to a different private owner of the same VEHICLE;
4.    The VEHICLE is subject to inspection (at OUR discretion and at YOUR expense) and transfer must take place within thirty (30) days of change of VEHICLE ownership;
5.    YOU may not transfer this CONTRACT to a vehicle dealer or to the customer of a vehicle dealer, nor may this CONTRACT be transferred to a commercial use application user if the commercial use surcharge was not paid at time of original CONTRACT purchase;
6.    All remaining underlying warranties must be transferred to the new owner;
7.    The new CONTRACT holder will be bound by the TERMS AND CONDITIONS of this CONTRACT;
8.    If the original owner/first retail purchaser full warranty does not transfer to the subsequent owner, this CONTRACT COVERAGE will not apply to any MECHANICAL BREAKDOWN OR FAILURE that would have been covered for the original owner/first retail purchaser under the manufacturer's original owner/first retail purchaser full warranty.

### O.    CANCELLATION OF YOUR CONTRACT

1.    YOU may cancel this CONTRACT by contacting American Auto Shield, LLC, **in writing**, at 1597 Cole Boulevard, Suite 200, Lakewood, CO 80401-3418 and submitting a request to cancel the CONTRACT.
    a.    If cancelled within the INITIAL TERM of the CONTRACT, which is **one (1) month** from the initial CONTRACT effective date, and if no claim has been made, YOU will receive a full refund of the amount paid for the INITIAL TERM.

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION
CALL 720-376-6882 or 800-856-7884**

    b.    If cancelled within a RENEWAL TERM, YOU will receive a pro rata refund based upon the number of days in force compared to the total number of days in that RENEWAL TERM, less claims paid and less a cancellation fee of Seventy-Five Dollars ($75.00), subject to state specific information provided in the "Individual State-Specific Variance" page at the end of this CONTRACT.

2.    YOU may non-renew this CONTRACT by either notifying US or by failing to make your RENEWAL TERM payment within fifteen (15) days of the CONTRACT expiration date.

3.    The ADMINISTRATOR may immediately cancel this CONTRACT for misrepresentation in obtaining this CONTRACT, misrepresentation in the submission of a claim, or if YOUR VEHICLE is found to be modified in a manner not recommended by the VEHICLE manufacturer.

4.    Anything contained in this CONTRACT to the contrary notwithstanding, in the event YOU do not accept or cash any refund check related to this CONTRACT within 90 days, that dollar amount will be applied to extend YOUR coverage a month at a time with coverage extending a full month increment even if such dollar amount applied toward an extended month only provides for a part of the stated monthly payment.

**NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION**
**CALL 720-376-6882 or 800-856-7884**

**Addendum 1**
**Additional Coverages**

**The following components/parts are COVERED in addition to the COVERAGE listed under Section B, of this CONTRACT. COVERAGE for the component/parts listed below supersedes those excluded in Section D, "EXCLUSIONS," of this CONTRACT.**

- **MARKET LABOR RATE:**   ADMINISTRATOR will authorize repairs for covered MECHANICAL BREAKDOWN OR FAILURE based upon the REPAIR FACILITY'S posted labor rate.  The maximum payable repair facility labor rate of One Hundred Dollars ($100.00) per hour shall not apply.

Addendum-1 LK

## Payment Plan Agreement

Payment Plan Provider:
**SING For Service, LLC d/b/a MEPCO**

**Service Contract #:**
MRF3469358

| Buyer | | Seller | Dealer #: 500405D |
|---|---|---|---|
| **Name:**<br>Joseph Manssor | | **Name:**<br>CARSHIELD | |
| **Address:**<br>2020 Paseo Del Prado Dr | | **Address:**<br>503 Pearl Drive | |
| **City, State, Zip:**<br>El Paso, TX 79936-3737 | | **City, State, Zip:**<br>St. Peters, MO 63376 | |
| **Phone:**<br>915-588-9084 | | **Phone:**<br>800-587-4960 | |
| **Email:**<br>liberty45@sbcglobal.net | | **Salesperson**<br>Allen Thigpen | **Email:** |

| Administrator | American Auto Shield, Llc |
|---|---|

| Vehicle Information | Contract Effective Date: 12/12/2020 |
|---|---|

You, the Buyer, may purchase the Vehicle Service Contract ("VSC") for the Cash Price shown in the Itemization of Payment Plan Amount, or according to the terms of this Payment Plan Agreement ("Agreement"). By signing this Agreement, you choose to purchase the VSC from the Seller according to this Agreement. The VSC is issued by "Administrator". The VSC number is provided at the top of this Agreement. You and we agree to be bound by the terms of this Agreement. "We," "Us" and "Our" refer to the Seller shown above, and upon assignment of this Agreement, to SING For Service, LLC ("MEPCO"). The important disclosures below are part of this Agreement.

EXHIBIT "B"

Payment Processing Center    **MEPCO**                                      **Phone: 800-397-6767**
                             **10 S. Lasalle St., Suite 2310**              **Fax: 312-853-0535**
                             **Chicago, IL 60603**                          **Page | 1**

**THE TERMS OF THIS AGREEMENT ARE CONTAINED ON MORE THAN ONE PAGE**

| IMPORTANT DISCLOSURES | | |
|---|---|---|
| INITIAL PAYMENT | REOCCURRING MONTHLY PAYMENT | TAXES ON SALE |
| $ 109.99 | $ 109.99 | $ 0.00 |

| Payment Schedule | | |
|---|---|---|
| Number of Payments | Each Monthly Payment Amount | When Monthly Payments are Due (Each month Beginning) |
| 1 | $ 109.99 | 01/12/2021 |

**Security Interest**: You give us a security interest in any refund due upon cancellation of the VSC.

**Late Charge**: Except as provided below, if you do not make your full payment within five (5) days of its scheduled due date, you will pay a late charge of the lesser of Ten Dollars ($10.00) or five percent (5%) on the part of the payment that is late. If you live in **Arizona**, **California**, **Colorado**, **the District of Columbia**, **Florida**, **Georgia**, **Hawaii**, **Idaho**, **Indiana**, **Iowa**, **Kansas**, **New York**, **Oklahoma**, **South Carolina**, **Virginia**, **West Virginia**, **Wisconsin** or **Wyoming**, your late charge will be the lesser of Ten Dollars ($10.00) or five percent (5%) of the part of the payment that is late, if you don't make your payment within ten (10) days of its scheduled due date. If you live in **Maine**, **Massachusetts**, **Mississippi**, or **North Carolina** your late charge will be the lesser of Five Dollars ($5.00) or five percent (5%) of the part of the payment that is late if you don't make your payment within fifteen (15) days of its scheduled due date.

**Prepayment**: If you pay off your payment plan early, you will not have to pay a penalty.

**Please read this Agreement for additional information on security interests, non-payment default and our right to require repayment in full before the scheduled maturity date.**

**PAYMENT OPTIONS:** You have paid Seller the Initial Payment in the amount set forth above. You will make your renewal payments, as scheduled and disclosed in the Important Disclosures section above, to MEPCO.

Payment Processing Center   MEPCO
10 S. Lasalle St., Suite 2310
Chicago, IL 60603

Phone: 800-397-6767
Fax: 312-853-0535
Page | 2

THE TERMS OF THIS AGREEMENT ARE CONTAINED ON MORE THAN ONE PAGE

**PAYMENT OPTION SELECTED:**

**AUTHORIZATION**

The balance of the Initial Payment shall be paid by you, and you hereby authorize MEPCO to make the applicable number of consecutive monthly charges to your credit/debit card or bank account listed below, in the amounts and at the times disclosed in the Payment Schedule (plus late charges and returned payment charges, if any). This authority remains in effect until MEPCO has received written notification of termination from you in time to allow reasonable opportunity for MEPCO to act on it or until the final installment payment plus all late charges and return fees have been paid from the account listed below. If charging a payment to your credit card or bank account causes you to go over your credit limit or account balance, your card issuer or bank may charge you a fee.

**Credit Card Authorization**

Card Number:  ___*************2051_____     Exp. Date:  ___11/23____

---

### Notice to Buyer

**1.** Do not sign this Agreement before you read it or if it contains any blank spaces.  **2.** You are entitled to an exact copy of this Agreement.  **3.** You have the right to cancel the Vehicle Service Contract at any time and make no further payments.  **4.** You have the right to pay in advance the full amount due without penalty.  **5.** Keep this Agreement to protect your legal rights.

**BY SIGNING BELOW, OR BY MAKING YOUR FIRST PAYMENT AFTER YOU HAVE RECEIVED A MAILED OR ELECTRONIC COPY OF THIS AGREEMENT, YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION BELOW, AND YOU AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT.**

| BUYER | SELLER |
|---|---|
| X */s/ Allen Thigpen*<br>*Phone Authorized Agent*<br>Signature | X  *CARSHIELD*<br>Signature |
| 12/12/2020<br>Date | 12/12/2020<br>Date |

In accordance with the terms and conditions of the agreement between Seller and MEPCO, Seller herby assigns its right, title and interest in this Agreement to MEPCO, 10 S. Lasalle St., Suite 2310, Chicago, IL 60603.

| | | |
|---|---|---|
| Payment Processing Center | **MEPCO**<br>**10 S. Lasalle St., Suite 2310**<br>**Chicago, IL 60603** | **Phone: 800-397-6767**<br>**Fax: 312-853-0535**<br>**Page | 3** |

## ADDITIONAL TERMS AND CONDITIONS

**PROMISE TO PAY**:  You agree to pay us the Payment Plan Amount according to the terms of this Agreement.

**LATE CHARGE AND RETURNED PAYMENT CHARGES**:  You agree to pay the late payment charges specified in the Important Disclosures on Page 2.  The applicable late charge is based upon your state of residence at the time you sign or ratify this Agreement.

<u>Except as provided below</u>, if any payment you make is returned unpaid for any reason, after we make any demand applicable law requires, and wait the time any applicable law requires, you agree to pay us a returned payment charge of Twenty-Five Dollars ($25.00).  If you live in **Arizona** or **Massachusetts**, you agree to pay a returned payment charge of Ten Dollars ($10.00).  If you live in **California** or **Wisconsin**, you agree to pay a returned payment charge of Fifteen Dollars ($15.00).  If you live in **Connecticut**, **Idaho**, **New York** or **Utah**, you agree to pay us a returned payment charge of Twenty Dollars ($20.00).  If you live in the **District** of **Columbia**, **Iowa** or **Wyoming**, you will not pay returned payment charges.  If you live in **Maine**, **Virginia** or **Vermont**, you will be liable for returned payment charges as prescribed by a court, if we take action against you.

All late charges, returned payment charges or other fees you incur must be paid in the next monthly payment and in accordance with the payment option you select and/or is in effect at the time of the next monthly payment.

**CANCELLATION AND ASSIGNMENT OF RIGHTS:**  You have the right to cancel the VSC at any time in accordance with the terms of the VSC.  If you exercise the right to cancel the VSC before making all payments, you agree to send written notice of the cancellation to the Administrator and to us.  You authorize us to direct the Administrator/Seller to cancel the VSC if we do not receive any payment within ten (10) days of the scheduled payment date, as applicable law allows.

You hereby grant us a security interest in and assign to us your right to receive refunds pursuant to the VSC.  If the VSC is cancelled before you have paid the full Payment Plan amount and any other fees or charges due to us under this Agreement, any refund due to you after proceeds are applied to your outstanding obligations under this Agreement (the "Buyer Refund") will be paid to you.  The Buyer Refund is calculated in the manner described in the VSC, but based on amounts actually paid by you rather than the Total Sales Price of the VSC.  If you are entitled to a Buyer Refund, you will receive the refund from the Seller or the Administrator of the VSC.  No assignee of the Seller shall have a contractual or other responsibility under this Agreement or the VSC to pay or calculate such refund, or for the performance of any other services required by the VSC.

**PAYMENTS AFTER CANCELLATION**:  Any payment you make after we receive notice of cancellation will constitute a reinstatement of the VSC, but will be applied to your outstanding obligation under this Agreement.  Neither the acceptance nor the application of any payment will constitute the reinstatement of the VSC or constitute a waiver of any default hereunder.

**DEFAULT**: If you fail to make any payment when due or subject to the requirement in this section, fail to comply with any other provision in this Agreement (default), after notice and any right to cure required by applicable law, we have the right to cancel the VSC and take any action permitted by law to collect what you owe.  Upon cancellation, you agree that we may collect and receive any refunds or proceeds with respect to the VSC.  We will apply those refunds and proceeds to your outstanding obligations under this Agreement.  If there is a surplus in excess of One Dollar ($1.00), you are entitled to the surplus.  Except where prohibited by applicable law, you hereby release and discharge us from any liability for damages with respect to cancellation of the VSC due to default and you shall indemnify and hold us harmless from any liabilities, claims, damages or causes of action for any action taken as a result of your default under this Agreement.  Our failure to require strict performance of any provision in this Agreement or to exercise any of our rights under this Agreement will not waive or relinquish any future right under this Agreement.

**Payment Processing Center**   **MEPCO**
                                 **10 S. Lasalle St., Suite 2310**        Phone: 800-397-6767
                                 **Chicago, IL 60603**                    Fax: 312-853-0535
                                                                          Page | 4

**THE TERMS OF THIS AGREEMENT ARE CONTAINED ON MORE THAN ONE PAGE**

**If required by applicable law, we will only consider the failure to comply with other provisions of this Agreement an event of default if our prospect of payment, performance, or realization of collateral is significantly impaired. Where required, we bear the burden of establishing significant impairment.

**POWER OF ATTORNEY:** In the event you default under the terms of this Agreement, and if allowed by applicable law, you hereby irrevocably appoint us as your true and lawful attorney-in-fact with respect to the VSC until all amounts payable hereunder are paid in full. If allowed by applicable law, you agree that we will have full power under this power of attorney to **(1)** cancel or reinstate the VSC, **(2)** endorse or execute, in your name, all checks issued and all other documents or instruments relating to the VSC, **(3)** receive, demand, collect or sue for any amounts relating to the VSC due and owing to us by the Administrator, insurer, Seller, or other obligor, and **(4)** take such other actions as are necessary to further the purposes of this Agreement.

**ACCEPTANCE, RATIFICATION, ACCURACY:** This Agreement shall be effective when signed by you and us, or where applicable, upon the first of the following events to occur after we mail you a copy of the Agreement: (1) you sign and transmit to us a copy of the signed Agreement, in wet ink or electronically, or (2) you make your first payment. Either signature or payment according to the terms of the Agreement ratifies and makes effective your and our obligations under the Agreement. You may not modify the preprinted terms of this Agreement.

**SERVICING AND COLLECTION CONTACTS:** By providing your wireless (cell) telephone number, you expressly consent to receiving telephone calls from us, and any assignee of this Agreement, concerning your Agreement, including calls to collect what you owe. Live calls may be made by one of our employees. Calls may also be made by a prerecorded, autodialed voice or text message as applicable law allows. Your consent covers all types of calls. We do not charge you for such calls. Your wireless carrier will charge you for our incoming calls and text messages according to your plan.

**ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between you and us. It supersedes any other written or oral agreement between the parties, and, except as otherwise set forth herein, may be modified only in writing signed by us. No oral changes to the terms of this Agreement are binding on you or us.

**REMEDIES, GOVERNING LAW, WAIVERS:** This Agreement is governed and construed in accordance with federal law and the laws of the state of your residence, as provided on the first page of this Agreement. Each provision in this Agreement will be interpreted so as to be effective and valid under applicable law. This Agreement includes an arbitration provision. By signing or ratifying this Agreement, you agree to be bound by the terms of the arbitration provision.

**MISCELLANEOUS:** The content and format of this Agreement has been adopted to provide you with important information in a clear and familiar form and its use does not imply that any particular federal or state law relating to lending or installment sales applies to this Agreement or transactions it contemplates. You expressly acknowledge and understand that the purchase of a VSC is not required either to purchase or obtain financing for a Vehicle. Time is of the essence in this Agreement.

For purchases primarily for personal, family or household use, the following disclosure applies.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR.**

**ARBITRATION PROVISION. This Arbitration Provision significantly affects your rights in any dispute with us. Please read this Arbitration Provision carefully before you sign or ratify this Agreement.**

**Payment Processing Center**   **MEPCO**                          **Phone: 800-397-6767**
                                **10 S. Lasalle St., Suite 2310**        **Fax: 312-853-0535**
                                **Chicago, IL 60603**                      **Page | 5**

**THE TERMS OF THIS AGREEMENT ARE CONTAINED ON MORE THAN ONE PAGE**

**EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT. IF A DISPUTE IS ARBITRATED, YOU AND WE WILL EACH GIVE UP CERTAIN RIGHTS THAT MAY BE AVAILABLE IN COURT, INCLUDING OUR RIGHT TO A TRIAL BY JURY. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US.**

Any claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause and the arbitrability of any issue), between you and us or our employees, agents, successors or assigns, which arises out of or relates in any manner to this Agreement or any resulting relationship (including any such relationship with third parties who do not sign this Agreement, such as an assignee of the Agreement) shall, at your or our election (or the election of any such third party), be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. This is called the "class action waiver."

You may choose the applicable rules of either the American Arbitration Association ("AAA") or another arbitration organization, subject to our approval. You may obtain a copy of the rules of the AAA by visiting its web site (www.adr.org). We waive the right to require you to arbitrate an individual claim if the amount you seek to recover qualifies as a small claim under applicable law.

This Arbitration Provision relates to an agreement that evidences a transaction involving interstate commerce. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.).

The arbitrators shall be attorneys or retired judges and shall be selected in accordance with the applicable rules of the chosen arbitration organization. The arbitrator shall apply substantive governing law and the applicable statute of limitations. The arbitration award shall be in writing. The arbitration hearing shall be conducted in the federal district in which you live, or such other place convenient to you as required by the rules of the chosen arbitration organization. If you demand arbitration first, you will pay the filing fee if the chosen arbitration organization requires it. We will advance and/or pay any other fees and costs required by the rules of the chosen arbitration organization.

The arbitrator's award shall be final and binding on all parties. There shall be a limited right to appeal to the extent allowed by the Federal Arbitration Act. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous.

If any part of this Arbitration Provision, other than the Class Action Waiver, is found by a court or arbitrator to be unenforceable, the remainder shall be enforceable. If the Class Action Waiver is found by a court or arbitrator to be unenforceable, the remainder of this Arbitration Provision shall be unenforceable. This Arbitration Provision shall survive the termination of any contractual agreement between you and us, whether by default or repayment in full.

**STATE LAW DISCLOSURES:**

**OHIO:** If you reside in Ohio, the following disclosures applies:  The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

Payment Processing Center    MEPCO                          Phone: 800-397-6767
                             10 S. Lasalle St., Suite 2310            Fax: 312-853-0535
                             Chicago, IL 60603                           Page | 6

THE TERMS OF THIS AGREEMENT ARE CONTAINED ON MORE THAN ONE PAGE

 **HomeSafe**

# Protect your budget from costly home repairs with HomeSafe.



- ✔ Highly customizable plans.
- ✔ Trusted, local pre-screened technicians.
- ✔ Easy, flexible payment terms.
- ✔ 30-day money-back guarantee.

## Relax And Enjoy Your Home

With HomeSafe, you don't have to worry about huge repair bills when a covered system or appliance breaks.

## COVERED ITEMS
### (varies depending on plan type)

| | |
|---|---|
| ✔ Air Conditioning | ✔ Refrigerators |
| ✔ Heating | ✔ Washing Machines |
| ✔ Thermostats | ✔ Dryers |
| ✔ Electrical | ✔ Range/Oven/Cooktops |
| ✔ Plumbing | ✔ Dishwashers |
| ✔ Water Heaters | ✔ Built-in Microwaves |
| ✔ Garbage Disposals | ✔ Trash Compactors |
| ✔ Doorbells | ✔ Garage Door Openers |
| ✔ Smoke Detectors | ✔ Ice Makers |

# Call 1-800-856-4414 to get your home covered today!

Mention **CarShield** to save **$25 off** your first month of coverage.



7 ndw-aasm2m - Print Date: 09/07/2021

0 - ndw-aasm2m - AUPTGOLD - 7
CARSHIELD
503 Pearl Drive
St. Peters, MO 63376

JOSEPH MANSSOR
2020 PASEO DEL PRADO DR
EL PASO TX  79936-3737

EXHIBIT "B"

# U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To *Carshield*

Street, Apt. No.; or PO Box No. *503 Pearl Dr.*

City, State, ZIP+4 *St. Peters, MO 63376*

7006 2150 0004 9082 8796

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE.

CERTIFIED MAIL™

PS Form 3800, August 2006      See Reverse for Instructions

- A mailing receipt
- A unique identifier for your mailpiece
- A record of delivery kept by the Postal Service for two years

**Important Reminders:**

- Certified Mail may ONLY be combined with First-Class Mail® or Priority Mail®.
- Certified Mail is *not* available for any class of international mail.
- NO INSURANCE COVERAGE IS PROVIDED with Certified Mail. For valuables, please consider Insured or Registered Mail.
- For an additional fee, a *Return Receipt* may be requested to provide proof of delivery. To obtain Return Receipt service, please complete and attach a Return Receipt (PS Form 3811) to the article and add applicable postage to cover the fee. Endorse mailpiece "Return Receipt Requested". To receive a fee waiver for a duplicate return receipt, a USPS® postmark on your Certified Mail receipt is required.
- For an additional fee, delivery may be restricted to the addressee or addressee's authorized agent. Advise the clerk or mark the mailpiece with the endorsement *"Restricted Delivery"*.
- If a postmark on the Certified Mail receipt is desired, please present the article at the post office for postmarking. If a postmark on the Certified Mail receipt is not needed, detach and affix label with postage and mail.

**IMPORTANT: Save this receipt and present it when making an inquiry.**

PS Form 3800, August 2006 *(Reverse)* PSN 7530-02-000-9047

Re: Manssor, J.

SENDER: COMPLETE THIS SECTION

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Carshield
503 Pearl Dr.
St. Peters, MO 63376

9590 9402 6086 0125 5951 60

2. Article Number *(Transfer from service label)*

7006 2150 0004 9082 8796

PS Form **3811**, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

USPS TRACKING #

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 6086 0125 5951 60

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

The Rago Law Office

813 Myrtle Ave.
El Paso, Texas 79901

RE: Mansor, J.



# JEFF D. RAGO
ATTORNEY AT LAW

**VIA FIRST CLASS MAIL & CERTIFIED MAIL**
Return Receipt Requested
Article Number: 70062150000490828796

July 9, 2021

Carshield
503 Pearl Dr.
St. Peters, MO 63376

     Re:    Josef Manssor, Contract No. MRF3469358.

Dear Sirs:

    Please be advised that Josef Manssor, hereinafter referred to as "Plaintiff," has retained the undersigned law office to prosecute his complaint and cause of action regarding the contract referenced. This letter constitutes his formal notice of complaint and demand for restitution and/or damages pursuant to the Texas Deceptive Trade Practices Act-Consumer Protection Act V.T.C.A. Business and Commerce Code, Section 17.41 et seq.

## I. FACTUAL BACKGROUND

    On or about December 12, 2020, Plaintiffs entered into a consumer relationship with your company, hereinafter referred to as "Defendant", for the issuance of a policy from CarShield regarding coverage for any unexpected vehicle repairs.

    On or about December 12, 2020 Plaintiff began to make monthly payments in the amount of $109.99 for the coverage on unexpected repairs.  Plaintiff was never told during the process of accepting the policy that there was an exclusion of RV's and any vehicle considered to be an RV.  Plaintiff provided you with the vehicle information required for the coverage.  At no time was Plaintiff advised that his 2006 GMC Savana would be considered an RV.

    On April 23, 2021 Plaintiff began to experience mechanical issues with his 2006 GMC Savana and took it to Casa Buick GMC for repairs.  Upon filing a claim through your policy, he was shocked to learn that you denied coverage for the necessary repairs.  Although the claim was denied under RV coverage it is actually a GMC Savanna Van and not an RV as indicated to my client.  All parts that coverage is being sought for, are listed as GMC parts and part of the GMC vehicle.  Further more, said parts are included as part of the coverage of the policy issued to Plaintiff.

    Plaintiff was deceptively lead to believe that a policy was issued by CarShield under contract number MRF3469358.  Plaintiff received a contract indicating that the above policy would be in effect as long as

the premium was up to date on all payments.

Thereafter, Plaintiff provided the contract information as proof of the insurance, since that was required to call and verify benefits and to begin work on the repairs.  The individual sought verification of the policy by calling CarShield, who claimed that there was no coverage for RV's.  As a result of this, Plaintiff was subjected to pay for the repairs on his 2006 GMC Savana in the amount of $8,224.56.

Plaintiff then contacted Car Shield to demand an answer as to why the policy was not covering the repairs after it was properly paid.  Plaintiff was told that the policy did not cover RV's and his vehicle was considered an RV.  Plaintiff was never advised at the time of purchasing the insurance policy that RV's are excluded from any coverage.  Therefore, defrauding Plaintiff from any repairs covered according to the contract entered into.

Plaintiffs complied with all conditions precedent regarding the purchase of the policy and made all payments in accord with the agreement and then were not treated properly under the law.

As of April 23, 2021, the damages amount to the denial of the repairs are in the amount of $8,224.56, the amount of the repairs for the 2006 GMC Savana and the amount of $750.00 for attorneys fees up to this point.

As a result of your uncooperative attitude, showing of bad faith, and your unconscionable actions, we are demanding the total amount of $8,224.56, which represents only the losses sustained by Plaintiff for the cost at this time.  Said amount will remain open for 60 days, upon which time this offer will terminate and Plaintiffs will seek treble damages and  attorney's fees in excess of $2,250.00 as outlined herein.

## II.  ATTEMPTS TO RESOLVE THIS MATTER

On numerous occasions, Plaintiff  has made attempts to resolve this matter with your company, via telephone and by letter.

## III.  BASIS FOR RECOVERY

The above complaint constitutes false, misleading or deceptive business practices pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act.  The relevant portions of the above stated Act are as follows:

17.44.  Construction and Application

This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

17.45.  Definitions

2

As used in the subchapter:

(2)    "Services" means work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods.

(3)    "Person" means an individual, partnership, corporation, association, or other group, however organized.

(4)    "Consumer" means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $ 25 million or more, or that is owned or controlled by a corporation or entity with assets of $ 25 million or more.

(6)    "Trade" and "commerce" mean the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state.

(9)    "Knowingly" means actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim or, in an action brought under Subdivision (2) of Subsection (a) of Section 17.50, actual awareness of the act or practice constituting the breach of warranty, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

17.46. Deceptive Trade Practices Unlawful

"(a)    False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60 and 17.61 of this code.

"(b)    Except as provided in Subsection (d) of this section, the term "false, misleading or deceptive acts or practices" includes, but is not limited to, the following acts: .

.  (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
. (3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;
. (4) using deceptive representations or designations of geographic origin in connection with goods or services;
.  (5)  representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have ...;
. (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
. (8) disparaging the goods, services, or business of another by false or misleading

3

representation of the facts;

. (12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;. .

17.50.  Relief for Consumers

"(a)    consumer may maintain an action where any of the following constitute a producing cause of actual damages:

    "(1)    the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter;

    "(2)    breach of an express or implied warranty;

    "(3)    any unconscionable action or course of action by any person....

"(b)    In a suit filed under this section, each consumer who prevails may obtain:

    "(1)    the amount of actual damages found by the trier of fact.  In addition the court shall award two times that portion of the actual damages that does not exceed $ 1,000.  If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $ 1,000. . .

    "(3)    orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter; and

    "(4)    any other relief which the court deems proper, including the appointment of a receiver or the revocation of a license or certificate authorizing a person to engage in business in this state if the judgment has not been satisfied within three months of the date of the final judgment."  Costs and fees for such receivership or other relief shall be assessed against the defendant.

    "(d)    Each consumer who prevails shall be awarded court costs and reasonable and necessary attorney's fees."

17.50A.  Notice: Offer of Settlement

"(a)    As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 60 days before filing the suit advising the person of the consumer's specific complaint and the amount of actual damages and expenses, including attorney's fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant. . .

"(c)    Any person who receives the written notice provided by Subsection (a) of this section may, within 60 days after the receipt of the notice, tender to the consumer a written offer of settlement, including an agreement to reimburse the consumer for the attorney's fees, if any, reasonably incurred by the consumer in asserting his claim up to the date of the written notice. . .  Any offer of settlement not accepted within 60 days of receipt by the consumer shall be deemed to have been rejected by the consumer."

## IV. RELIEF REQUESTED

My client wishes to settle this matter amicably and requests that you send a cashier's check or money order in the amount of  **$8,224.56**, made payable to Jeff D. Rago and sent to the above address.

If you desire to resolve this matter, please contact this office within sixty (60) days of your receipt of this letter, so we might avoid unnecessary time, expenses and additional attorney fees in litigating this matter.  Please be advised that all communication must be in writing.

In the event that this matter is unresolved within sixty (60) days from the date you receive this letter, my client has instructed me to file a lawsuit against you under the Texas Deceptive Trade Practices Act - Consumer Protection Act, wherein we shall seek the maximum damages allowed by law, plus attorney's fees and costs of court.  Attorney's fees, for this type of case, could range from $2,600.00 to $55,000.00, not including payment for counsel to represent your company.

Please contact me in writing at your earliest convenience so that we may discuss this matter.  If I do not hear from you within the next sixty (60) days, I will assume that you do not wish to settle this matter out of court.

Pursuant to the  Texas Deceptive Trade Practices Act - Consumer Protection Act, I am required to provide 60 days for a response under the act.  I am not however constrained to the same time limits for breach of contract, conversion and all other claims we are presenting.  Please be advised that should I not hear from you in the next ten days for the breach of contract, fraud and conversion matters, I will proceed with filing a lawsuit.

Sincerely,



**JEFF D. RAGO**
*Attorney at Law*

EXHIBIT "B"

cc:    em



# JEFF D. RAGO
## ATTORNEY AT LAW

November 17, 2021

Carshield
503 Pearl Dr.
St. Peters, MO 63376

      Re:    Josef Manssor, Contract No. MRF3469358.

Dear Sirs:

I am in receipt of your correspondence dated September 7, 2021, unfortunately I am in disagreement with your response regarding Mr. Josef Manssor. I am not disputing that he entered into a month to month Vehicle Service Contract with respect to his 2006 GMC Savana Van. You have denied coverage for Mr. Josef Manssor's 2006 GMC Savana Van insisting that it is an RV, when in fact it is not. The information you provided under the terms of the contract, Section D, subsection 19 describe vehicles not related or in the same category as Mr. Manssor's 2006 GMC Savana Van.

You also stated that you have refunded Mr. Josef Manssor a total of $549.95 to which the amount is incorrect. I have in my possession check number 53836 in the amount of $439.96 made payable to Joseph Manssor, which has not been cashed. You alleged that he has been fully refunded but the information in my file states differently. The check you have mailed out to my client has not cleared or settled this matter and your lack of good faith will be shown in Court pursuant to your letter, which appears to continue denying coverage. I have been advised by my client that he wishes to pursue with litigation should this matter not be amicably resolved.

Sincerely,

**JEFF D. RAGO**
*Attorney at Law*

em

EXHIBIT "C"

# CASA BUICK GMC BODY SHOP

6801 CIELO VISTA DRIVE EL PASO TX 79925, EL
PASO, TX 79925
Phone: (915) 778-7781
FAX: (915) 772-6771

| Workfile ID: | 114fafb1 |
|---|---|
| PartsShare: | 6cnbwy |
| Federal ID: | 85-3256411 |

### Preliminary Estimate

## Customer: Manssor, Joseph

Written By: Frank Granados

| Insured: | Manssor, Joseph | Policy #: | | Claim #: | |
|---|---|---|---|---|---|
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 |
| Point of Impact: | | | | | |

| Owner: | Inspection Location: | Insurance Company: |
|---|---|---|
| Manssor, Joseph | CASA BUICK GMC BODY SHOP | |
| 2020 Paseo Del Prado | 6801 CIELO VISTA DRIVE EL PASO TX 79925 | |
| El Paso, TX 79936 | EL PASO, TX 79925 | |
| (915) 588-9084 Cell | Repair Facility | |
| | (915) 778-7781 Business | |

## VEHICLE

2006 GMC Savana Cargo 1500 135" WB RWD w/Upfitter Pkg 3D VAN 8-5.3L Gasoline SFI

| VIN: | 1GDFG15T561116761 | Interior Color: | | Mileage In: | 1 | Vehicle Out: | |
|---|---|---|---|---|---|---|---|
| License: | | Exterior Color: | | Mileage Out: | 145,423 | | |
| State: | | Production Date: | | Condition: | | Job #: | |

| TRANSMISSION | Power Locks | CONVENIENCE | Passenger Air Bag |
|---|---|---|---|
| Automatic Transmission | Power Mirrors | Air Conditioning | Anti-Lock Brakes (4) |
| Overdrive | Heated Mirrors | Intermittent Wipers | 4 Wheel Disc Brakes |
| **POWER** | **DECOR** | Tilt Wheel | **WHEELS** |
| Power Steering | Dual Mirrors | Cruise Control | Styled Steel Wheels |
| Power Brakes | Privacy Glass | **SAFETY** | **PAINT** |
| Power Windows | Console/Storage | Drivers Side Air Bag | Clear Coat Paint |

Get live updates at  www.carwise.com/e/3YahGB

## Preliminary Estimate

**Customer: Manssor, Joseph**

2006 GMC Savana Cargo 1500 135" WB RWD w/Upfitter Pkg 3D VAN 8-5.3L Gasoline SFI

| Line | | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|------|---|------|-------------|-------------|-----|------------------|-------|-------|
| 1 | # | Repl | ENGINE OEM  PART # 19367777 | | 1 | 4,238.67 | | M |
| 2 | # | Repl | EXHAUST MANIFILD GASKETS PART # 12617944 | | 2 | 42.02 | | M |
| 3 | # | Repl | WATER PUMP GASKETS OEM PART#12630299 | | 2 | 15.42 | | M |
| 4 | **COOLING** | | | | | | | |
| 5 | * | Repl | Serpentine belt 145 amp | 12637204 | 1 | 84.02  m | 0.0 | M |
| 6 | # | Repl | OIL PAN GASKET OEM PART # 12612350 | | 1 | 49.73 | | |
| 7 | # | Repl | OIL (LOF) | | 1 | | | |
| 8 | # | Repl | COOLANT PART# 12346290 | | 2 | 41.10 | | |
| 9 | # | Repl | LABOR CHARGES FOR ALL PARTS | | 1 | | 25.0 | M |
| | | | | **SUBTOTALS** | | 4,470.96 | 25.0 | 0.0 |

### ESTIMATE TOTALS

| Category | Basis | | | Rate | Cost $ |
|----------|-------|---|---|------|--------|
| Parts | | | | | 4,470.96 |
| Mechanical Labor | 25.0 hrs | @ | | $ 135.39 /hr | 3,384.75 |
| Subtotal | | | | | 7,855.71 |
| Sales Tax | $ 4,470.96 | @ | | 8.2500 % | 368.85 |
| **Grand Total** | | | | | **8,224.56** |
| Deductible | | | | | 0.00 |
| **CUSTOMER PAY** | | | | | **0.00** |
| **INSURANCE PAY** | | | | | **8,224.56** |

**MyPriceLink Estimate ID / Quote ID:**

808354907538071552 / 83868782

# Casa
**Buick GMC**

6800 Montana Ave, El Paso, TX 79925
Phone: (915) 778-7781 | www.casabuickgmcelpaso.com

**SERVICE DEPARTMENT HOURS**
7:00 a.m. to 6:00 p.m.
Monday - Friday
7:00 a.m. to 1:00 p.m. Saturday

| R/O Open Date | R/O Number |
|---|---|
| 03/29/21 | 683954/2 |
| R/O Close Date | Status |
| 05/11/21 | Reprint |
| Mileage In | Mileage Out |
| 145423 | 145429 |
| Service Advisor / Tag # | |
| DANIEL MARTINEZ/3073 | |

MANSSOR, JOSEPH
2020 PASEO DEL PRADO DR
EL PASO, TX  79936

| | |
|---|---|
| Work Phone | Vehicle Identification Number |
| 915-630-8480 | 1GDFG15T561116761 |
| Home Phone | Delivery Date | In-Service Date |
| 915-588-9084 | 03/05/07 | 00/00/00 |

| Year | Make | Model | Body | Color | License Number |
|---|---|---|---|---|---|
| 2006 | GMC | SAVANA CARGO | | SILV BIRCH | |

| DESCRIPTION OF SERVICE AND PARTS | AMOUNT |
|---|---|
| Y COMPONENTS, REPLACED THE SPARK PLUGS AND GASKETS. REPLACED THE ENGINE MOUNTS, INSTALLED ALL REMOVED COMPONENTS, TOPPED OFF ENGINE OIL AND INSTALLED NEW FILTER. TOPPED OFF ALL FLUIDS, PURGED THE AIR FROM THE COOLING SYSTEM, ROAD TESTED, VERIFIED RE PAIRS. | |

#2 -          MR 06BUZ: LIGHT LINE
CUSTOMER STATES THAT AT TIMES THE ENGINE MAKES A L
OUD SOUND ON START UP, LACKS POWER AND THE CHECK G
AUGES LIGHT COMES ON WHILE THE OIL PRESSURE SHOWS
LOW, CHECK AND ADVISE.
     Caused by
     SEE LINE #1
Tech: RAYMOND LEWIS(678)
Sub Total:  Labor: .00   Parts: .00   Total: .00

#3 -          MR 01BUZ23: MULTI-PT INSPECTION
COMPLETELY CHECK MY VEHICLE SEE ATTACHED FUEL AND
SAFETY CHECK LIST FOR RESULTS AND RECOMMENDATIONS.
     Caused by
     COMPLIMENTARY
Tech: STEVE MLETZKO(007)
COMPLETED. SEE MPVI.

Please Note: 630-8480;n.layman@americanautoshield.com;1-800-531
             -1925 ext2585;FAX 849-0224;881-4506

TERMS: STRICTLY CASH UNLESS ARRANGEMENTS ARE MADE. "I hereby authorize the repair work hereinafter to be done along with the necessary material and agree that you are not responsible for loss or damage to vehicle or articles left in the vehicle in case of fire, theft, or any other cause beyond your control or for any delays caused by unavailability of parts or delays in parts shipments by the supplier or transporter. I hereby grant you or your employees permission to operate the vehicle herein described on streets, highways, or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on above vehicle to secure the amount of repairs thereto."

DISCLAIMER OF WARRANTIES. Any warranties on the products sold hereby are those made by the manufacturer. The seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products. Any limitation contained herein does not apply where prohibited by law.

| | |
|---|---|
| LABOR | 3249.36 |
| PARTS | .00 |
| DEDUCTIBLE | .00 |
| SUBLET | .00 |
| SHOP SUPPLIES | .00 |
| HAZARDOUS MATERIALS | .00 |
| SALES TAX OR TAX I.D. | .00 |
| SPECIAL ORDER DEPOSIT | .00 |
| DISCOUNTS | .00 |
| TOTAL DUE | 3249.36 |

**NO RETURN ON ELECTRICAL OR SAFETY ITEMS OR SPECIAL ORDERS.**

X

© 2012 DEALERTRACK SYSTEMS, Inc. – Dealership Application Group



# Casa
**Buick GMC**

6800 Montana Ave, El Paso, TX 79925
Phone: (915) 778-7781 | www.casabuickgmcelpaso.com

**SERVICE DEPARTMENT HOURS**
7:00 a.m. to 6:00 p.m.
Monday - Friday
7:00 a.m. to 1:00 p.m. Saturday

| | |
|---|---|
| R/O Open Date | R/O Number |
| 03/29/21 | 683954/1 |
| R/O Close Date | Status |
| 05/11/21 | Reprint |
| Mileage In | Mileage Out |
| 145423 | 145429 |

| Service Advisor / Tag # |
|---|
| DANIEL MARTINEZ/3073 |

MANSSOR, JOSEPH
2020 PASEO DEL PRADO DR
EL PASO, TX  79936

| | |
|---|---|
| Work Phone | Vehicle Identification Number |
| 915-630-8480 | 1GDFG15T561116761 |
| Home Phone | Delivery Date | In-Service Date |
| 915-588-9084 | 03/05/07 | 00/00/00 |

| Year | Make | Model | Body | Color | License Number |
|---|---|---|---|---|---|
| 2006 | GMC | SAVANA CARGO | | SILV BIRCH | |

| DESCRIPTION OF SERVICE AND PARTS | AMOUNT |
|---|---|
| AR#: 42588 | |

#1 -       MR 08BUZ01: SERVICE ENGINE SOON
CUSTOMER STATES THAT "SERVICE ENGINE SOON" LIGHT I
S ON. CHECK AND ADVISE.
          Caused by
DIAGNOSED AND INSPECTED, FOUND LOW ENGINE OIL PRES
SURE, DROPS VERY LOW AND MAKES A KNOCKING NOISE. D
ISASSEMBLED THE ENGINE COMPLETE, LOSS OF OIL PRESS
URE DAMAGED CAM BEARINGS AND CRANK BEARINGS, CRANK
AND CAM HAVE WEAR.

| | | |
|---|---|---|
| Tech: RAYMOND LEWIS(678) | | 3249.36 |
| Installed 12617944 :SL-N-GASKET (03270-BPCKT) | 2@16.81 | 33.62 |
| Installed 12637204 :SL-N-BELT (01066-CT) | 1@67.22 | 67.22 |
| Installed 89060413 :SL-N-GASKET KIT (03270-CT) | 1@74.90 | 74.90 |
| Installed 12630223 :SL-N-GASKET (01079-PCKT) | 2@6.17 | 12.34 |
| Installed 12346290 :N-COOLANT (08800-BOPCKT) | 2@16.93 | 33.86 |
| Installed 19210283 :SL-N-FILTER (01836-BOPCKT) | 1@4.18 | 4.18 |
| Installed 19367777 :R-REMANUFACTURED ENGINE (00000 | 1@6738.67 | 6738.67 |
| Installed 19367777 :R-REMANUFACTURED ENGINE (00000 | -J@2500.00 | -2500.00 |
| Installed 12589867 :SL-N-SENSOR (02383-PCKT) | 2@82.46 | 164.92 |
| Installed 12677836 :SL-N-SENSOR (01800-BPCKT) | 1@66.62 | 66.62 |
| Installed 917033 : | 1@49.99 | 49.99 |
| Installed 25863822 :SL-N-MOUNT (00027-CT) | 2@144.30 | 288.60 |
| Installed 12299585 :SL-N-SPARK PLUG (02270-PCKT) | 8@8.82 | 70.56 |
| Installed 19355335 :N-REFRIGERANT (08800-BOPCKT) | 4@10.70 | 42.80 |
| Installed 88865601 :N-FLUID (08800-BOPCKT) | 1@7.68 | 7.68 |

Sub Total: Labor: 3249.36   Parts: 5155.96   Total: 8405.32
REPLACED THE ENGINE COMPLETE, SWAPPED ALL NECESSAR

TERMS: STRICTLY CASH UNLESS ARRANGEMENTS ARE MADE. "I hereby authorize the repair work hereinafter to be done along with the necessary material and agree that you are not responsible for loss or damage to vehicle or articles left in the vehicle in case of fire, theft, or any other cause beyond your control or for any delays caused by unavailability of parts or delays in parts shipments by the supplier or transporter. I hereby grant you or your employees permission to operate the vehicle herein described on streets, highways, or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on above vehicle to secure the amount of repairs thereto."

DISCLAIMER OF WARRANTIES. Any warranties on the products sold hereby are those made by the manufacturer. The seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products. Any limitation contained herein does not apply where prohibited by law.

| | |
|---|---|
| LABOR | |
| PARTS | |
| DEDUCTIBLE | |
| SUBLET | |
| SHOP SUPPLIES | |
| HAZARDOUS MATERIALS | |
| SALES TAX OR TAX I.D. | |
| SPECIAL ORDER DEPOSIT | |
| DISCOUNTS | |
| TOTAL DUE | |

**NO RETURN ON ELECTRICAL OR SAFETY ITEMS OR SPECIAL ORDERS.**

X

© 2012 DEALERTRACK SYSTEMS, Inc. • Dealership Application Group

## Repair Order Line Totals

MANSSOR, JOSEPH                    RO #   683954

| Line | PM | Hours | Labor | Parts | Sublet | Discount Labor | Discount Parts | Total |
|------|----|-------|-------|-------|--------|-------|-------|-------|
| 1 | C | 24.00 | 3249.36 | 5155.96 | | | | 8405.32 |
| 2 | C | | | | | | | |
| 3 | C | | | | | | | |
| Totals | | 24.00 | 3249.36 | 5155.96 | | | | 8405.32 |